# EXHIBIT A

**IN THE COUNTY COURT OF THE FIFTH JUDICIAL CIRCUIT**
**IN AND FOR HERNANDO COUNTY, FLORIDA**
**CIVIL CLAIMS DIVISION**

**JOHN BROOKS,**

    *Plaintiff,*

    v.

**EXPERIAN INFORMATION**
**SOLUTIONS, INC.,**
**FORTIVA FINANCIAL, LLC,**
**EQUIFAX INFORMATION**
**SERVICES, LLC,**
*and*
**ATLANTICUS SERVICES**
**CORPORATION,**

    *Defendants.*

Case No.:

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, John Brooks, ("Mr. Brooks"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, Experian Information Solutions, Inc. ("Experian"), Fortiva Financial, LLC ("Fortiva"), Equifax Information Services, LLC ("Equifax"), and Atlanticus Services Corporation ("Atlanticus"), (collectively, the "Defendants") stating as follows:

## PRELIMINARY STATEMENT

1. This is an action for damages exceeding $8,0000 but not exceeding $30,000, exclusive of attorneys' fees and costs, brought by Mr. Brooks against Fortiva and Atlanticus for violations of the Florida Civil Remedies for Criminal Practices Act, § 772.101, Fla. Stat., *et seq.* ("CRCPA"), and the Florida Consumer Collection Practices Act, § 559.55, Fla. Stat., *et seq.*

("FCCPA"), against Experian and Equifax only for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), and against Fortiva and Atlanticus for Breach of Contract.

## JURISDICTION AND VENUE

2.      Jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, the CRCPA, § 772.104, Fla. Stat., the FCCPA, § 559.77(1), Fla. Stat., and § 34.01, Fla. Stat.

3.      The Defendants are subject to the provisions of the FCRA, the CRCPA, and FCCPA, and to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat.

4.      Venue is proper in Hernando County, Florida, because the acts complained of were committed and / or caused within Hernando County by the Defendant.

## PARTIES

### Mr. Brooks

5.      Mr. Brooks is a natural person residing in the City of Spring Hill, Hernando County, Florida.

6.      Mr. Brooks is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c) and the FCCPA, § 559.55(8), Fla. Stat.

### Atlanticus

7.      Atlanticus is a Georgia corporation with a principal business address of 5 Concourse Parkway, Suite 300, Atlanta, GA 30328.

8.      Atlanticus' Georgia registered agent is Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

9.      Atlanticus is not registered to conduct business within the State of Florida.

### Fortiva

10.     Fortiva is a Georgia limited liability company with a principal business address of 5 Concourse Parkway, Suite 300, Atlanta, GA 30328.

11.     Fortiva's Georgia registered agent is Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

12.     Fortiva is not registered to conduct business within the State of Florida.

13.     Fortiva is a wholly-owned subsidiary and/or affiliate company of Atlanticus.

### Experian

14.     Experian is an Ohio corporation, with a principal business address of 475 Anton Blvd., Costa Mesa, CA 92626.

15.     Experian is registered to conduct business in the State of Florida, where its registered agent is CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

### Equifax

16.     Equifax is a Georgia limited liability company, with a principal business address of 1550 Peachtree Street NW, Atlanta, GA 30309.

17.     Equifax is registered to conduct business in the State of Florida, where its Registered Agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

18.     Experian and Equifax are nationwide credit reporting agencies ("CRAs") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, or on a cooperative nonprofit basis, they regularly engage in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, while using means of interstate commerce, specifically the U.S. mail and internet, for the purpose of preparing or furnishing consumer reports.

### FACTUAL ALLEGATIONS

19.     Sometime in or around April 2021, Mr. Brooks obtained an Aspire® Mastercard with a credit line of $400 (the "Aspire® Account").

20.     The stated interest rate on the Aspire® Account exceeded 25%.

21.     The Aspire® Account was used by Mr. Brooks for personal and household expenses.

22.     The Aspire® Account thus meets the definition of *Debt* under the FCCPA, § 559.55(6), Fla. Stat.

23.     § 687.071(2), Fla. Stat., renders extensions of credit made with an annual interest rate between 25% and 45% a second-degree misdemeanor.

24.     § 687.071(7), Fla. Stat. indicates any such extension of credit, and logically any debt stemming from such extension of credit, is void and unenforceable.

25.     Long-standing public policy in Florida confirms the impossibility of the alleged debt. *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935) (criminally usurious loans are "void as against the public policy of the state as established by its Legislature.")

26.     Any person who willfully makes a criminally usurious loan, in addition to subjecting themselves to criminal sanctions, forfeits the right to collect payment for the loan. *Id.*

27.     Indeed, even the recovery of the principal balance made at usurious rates is impermissible under Florida law. *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. Dist. Ct. App. 1988).

28.     The purpose of the usury statutes is to protect the needy borrower by penalizing the unconscionable money lender. *Stubblefield v. Dunlap*, 148 Fla. 401, 4 So.2d 519 (1941); *see also Pushee v. Johnson*, 123 Fla. 305, 166 So. 847 (1936); *River Hills, Inc. v. Edwards*, 190 So.2d 415 (Fla. 2d DCA 1966).

29.     Florida has taken usury one step further in the consumer loan context through the passing of the Consumer Finance Act, Chapter 516, Florida Statutes (the "Act").

30.     The Act requires licensure and state oversight for lenders issuing loans to Florida consumers in the amount of $25,000 or less. § 516.02(1), Fla. Stat.

31.     The Act further restricts the interest and fees which may be charged by a licensed consumer finance company.

32.     § 516.02(c), Fla. Stat., indicates that any loan which fails to comply with the Act is unenforceable in Florida *even if valid wherever made.*

33.     Thus, Florida has made clear that in order to enforce a consumer loan against a Florida resident, a lender must be licensed in Florida and comply with the Consumer Finance Act.

34.     Mr. Brooks' Aspire® Account charged an annual interest rate exceeding 25%, more than the rate permitted by the Act.

35.     Neither Fortiva or Atlanticus are licensed as Consumer Finance Companies in Florida.

36.     The Aspire® Account and any balance owed, is thus unenforceable against Mr. Brooks.

37.     The Aspire® Account made to Mr. Brooks by Fortiva and Atlanticus included an annual percentage rate that vastly exceeded the maximum lawful interest rate in Florida.

38.     The making, and collection, of the Aspire® Account constitutes a felony pursuant to § 687.071(3), Fla. Stat.

39.     Because the Aspire® Account was subject to an effective annual interest rate which vastly exceeded the 25% limit as proscribed in § 687.071(2), Fla. Stat., the Aspire® Account was void *ab initio* and unenforceable in Florida, pursuant to § 687.071(7), Fla. Stat.

40.     Any amount repaid on an illegal, usurious debt deemed *void ab initio* by state law constitutes unjust enrichment, even if less than the original amount of the loan. *See, e.g., Williams et al. vs. Big Picture Loans, LLC*, case 3:17-cv-461, E.D. Virginia, July 20, 2021.

41.     Further, the Aspire® Account is an *unlawful debt* pursuant to § 772.102(2)(a)(3), Fla. Stat.

42.     Around October 14, 2022, Fortiva and Atlanticus agreed to discharge the $1,042 it claimed was still owed on the account, reducing the balance to $0.

43.     Fortiva and Atlanticus also agreed to request deletion of the tradeline it had reported to Equifax and Experian concerning the Aspire® Account.

44.     However, despite the agreement to reduce the balance of the Aspire® Account to $0, Fortiva and Atlanticus continued to report the balance of the Aspire® Account to the CRAs, including Experian and Equifax, indicating $1,042 was owed, as recently as June 2024. **SEE PLAINTIFF'S EXHIBIT A.**

### Mr. Brooks' Disputes of the Aspire® Account

45.     In June 2023, Mr. Brooks disputed the Aspire® Account to Experian, indicating that the Aspire® Account should have been deleted as the result of a settlement agreement with Fortiva and Atlanticus.

46.     Experian and Equifax's dispute resolution systems are almost completely automated.

47.     Experian's automated systems initiated an Automated Consumer Dispute Verification Request ("ACDV") which was delivered to Fortiva and Atlanticus through a system known as e-OSCAR.

48.     Fortiva and Atlanticus responded to the dispute, certifying to Experian that its information was accurate and required no modification. *Id.*

49.     Experian's investigation consisted of nothing more than sending an ACDV to Fortiva/Atlanticus and relying on the results of the ACDV, without any independent investigation of its own.

50.     In May 2024, Mr. Brooks disputed the Aspire® Account to Experian a second time, indicating that the Aspire® Account should have been deleted as the result of a settlement agreement with Fortiva and Atlanticus.

51.     Experian's automated systems initiated another ACDV and sent it to Fortiva/Atlanticus via e-OSCAR.

52.     Once again, Fortiva and Atlanticus responded to the ACDV from Experian, certifying to Experian that their information was accurate and required no modification.

53.     And, once again, Experian's investigation consisted of nothing more than the automated sending and receipt of an ACDV; Experian made no independent investigation of its own.

54.     In May 2024, Mr. Brooks also disputed the Aspire® Account to Equifax, indicating the balance was discharged as part of a settlement and the tradeline should be deleted.

55.     Likewise, Equifax's automated systems initiated an ACVD which was delivered to Fortiva and Atlanticus through e-OSCAR.

56.     Similar to the Experian ACDVs, Fortiva and Atlanticus responded to the dispute from Equifax, certifying to Equifax that their information was accurate and required no modification. **SEE PLAINTIFF'S EXHIBIT B.**

57.     Fortiva and Atlanticus continued to report a balance on the Aspire® Account to both Experian and Equifax, despite having agreed nearly two years prior to reduce the balance to $0 and delete its tradeline.

58.     Thus, not only did Fortiva and Atlanticus not request deletion of the tradeline as agreed, they actively took measures to ensure it kept reporting.

59.     Fortiva and Atlanticus did not update their reporting of the Aspire® Account to indicate the information was "disputed by consumer."

60.     A June 2024 dispute to Equifax resulted in the same scenario playing out: Equifax's investigation consisted of nothing more than sending an ACDV to Fortiva/Atlanticus, and Fortiva/Atlanticus rubber-stamped its information as accurate without any actual investigation.

61.     If data furnishers like Fortiva and Atlanticus decides to report disputed information as verified, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle v. Midland Credit Mgmt., Inc.,* 827 F.3d 1295 (11th Cir. 2016).

62.     Zero evidence exists to support the conclusion that Fortiva and Atlanticus' reported data was true. As such, Fortiva and Atlanticus could not have possibly obtained any, much less sufficient evidence, to support that its reports were accurate.

63.     Fortiva and Atlanticus did not report the information as disputed; the failure to update a report to indicate that a debt is disputed can, in and of itself, violate the FCRA. *See Saunders v. Branch Banking and Trust Co. of VA*, 526 F.3d 142 (4th Cir. 2008).

64.     For plainly obvious reasons, Fortiva and Atlanticus failed to make a reasonable investigation into Mr. Brooks' disputes. No reasonable investigation could have determined that the Aspire® Account – at best, highly questionable to begin with – was still owed by Mr. Brooks.

65.     Experian and Equifax also failed to make reasonable investigations into Mr. Brooks' disputes.

66.     Upon receipt of the ACDV response, both Equifax and Experian utilized an automated system which made rudimentary checks of tradeline data between what Fortiva and Atlanticus had reported and the data contained in Equifax and Experian's own files on Mr. Brooks, *e.g.*, his name, address, date of birth, and Social Security number.

67.     For at least the last 35 years, courts in this district have recognized that a CRA cannot rely upon its data furnisher exclusively, when the consumer disputes the accuracy of the

furnisher's version of events and provides evidence to the contrary. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [data furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D.Fla.1985).

68.     In sum, the FCRA's requirements should have resulted, at the very minimum, in Equifax and Experian doing more than merely sending an ACDV to Fortiva and Atlanticus to investigate Mr. Brooks' disputes.

69.     Experian sold at least sixteen (16) reports since June 2023, concerning Mr. Brooks which contains the false and defamatory Aspire® Account tradeline.

70.     As of the date of this filing, the erroneous and defamatory Aspire® tradeline continues to report to Mr. Brooks Equifax and Experian credit history and is included in reports sold about him by Experian and Equifax.

71.     As a result of Fortiva and Atlanticus' illegal attempts to collect the unlawful – and discharged -- Aspire® Account, Mr. Brooks suffered emotional distress, anger, and frustration.

72.     As a result of Equifax and Experian's unreasonable investigations, Mr. Brooks suffered emotional stress, loss of time having to continuously dispute the Aspire®, anger and frustration.

73.     Therefore, Mr. Brooks has hired the aforementioned law firm to represent him in this matter and has assigned his right to attorney fees and costs to the law firm.

**COUNT I**
**FORTIVA & ATLANTICUS' JOINT & SEVERAL VIOLATIONS OF THE**
**FCCPA, § 559.72(7), Fla. Stat.**

74.     Mr. Brooks adopts and incorporates paragraphs 1 – 73 as if fully restated herein.

75.     The Aspire® Account was an illegitimate and unenforceable debt.

76.     In fact, Mr. Brooks had undergone a lengthy legal process to settle the alleged debt with Fortiva and Atlanticus in 2022.

77.     However, Fortiva and Atlanticus attempted to collect the Aspire® Account from Mr. Brooks through reporting the Aspire® Account to the CRAs.

78.     As such, Mr. Brooks felt harassed.

79.     Mr. Brooks felt emotionally distressed.

80.     Therefore, Fortiva and Atlanticus violated § 559.72(7), Fla. Stat., when they attempted to collect the Aspire® Account through means of reporting it to the CRAs.

81.     Fortiva and Atlanticus' actions were willful, intentional, and done for the express purpose of collecting an unenforceable debt from Mr. Brooks.

**WHEREFORE,** Mr. Brooks respectfully requests this Honorable Court enter judgment against Fortiva and Atlanticus, jointly and severally, for:

a.   Statutory damages of $1,000.00 pursuant to § 559.77(2), Fla. Stat.;

b.   Actual damages pursuant to § 559.77(2), Fla. Stat.;

c.   Injunctive relief preventing Fortiva and Atlanticus from attempting to collect the alleged Aspire® Account from Mr. Brooks pursuant to § 559.77(2), Fla. Stat.;

d.   Reasonable costs and attorney's fees pursuant to pursuant to § 559.77(2), Fla. Stat.; and,

e.   Such other relief that this Court deems just and proper.

**COUNT II**
**FORTIVA & ATLANTICUS' JOINT & SEVERAL VIOLATIONS OF THE**
**FCCPA, § 559.72(9), FLA. STAT.**

82.     Mr. Brooks adopts and incorporates paragraphs 1 – 73 as if fully restated herein.

83.     The Aspire® Account was an illegitimate and unenforceable debt.

84.     Fortiva and Atlanticus were in possession of the original loan documents and thus knew, or should have known, that the Aspire® Account contained an illegal interest rate in Florida.

85.     Furthermore, Fortiva and Atlanticus should have known that Mr. Brooks had settled the debt and had come to an agreement in 2022.

86.     However, Fortiva and Atlanticus attempted to collect the Aspire® Account from Mr. Brooks by reporting it to the CRAs.

87.     Therefore, Fortiva and Atlanticus violated § 559.72(9), Fla. Stat., when they attempted to collect the Aspire® Account while knowing it was an illegitimate debt.

88.     Fortiva and Atlanticus violated § 559.72(9), Fla. Stat., when they asserted the right to collect the Aspire® Account from Mr. Brooks, when they knew they did not have the right to collect the Aspire® Account because the debt was an illegitimate and unenforceable debt.

89.     The Fortiva and Atlanticus' actions were willful, intentional, and done for the express purpose of collecting an unenforceable debt from Mr. Brooks.

**WHEREFORE,** Mr. Brooks respectfully requests this Honorable Court enter judgment against Fortiva and Atlanticus, jointly and severally, for:

   a.   Statutory damages of $1,000.00 pursuant to § 559.77(2), Fla. Stat.;

   b.   Actual damages pursuant to § 559.77(2), Fla. Stat.;

   c.   Injunctive relief preventing Fortiva and Atlanticus from attempting to collect the alleged Aspire® Account from Mr. Brooks pursuant to § 559.77(2), Fla. Stat.;

   d.   Reasonable costs and attorney's fees pursuant to pursuant to § 559.77(2), Fla. Stat.; and,

   e.   Such other relief that this Court deems just and proper.

## COUNT III
## FORTIVA & ATLANTICUS' JOINT & SEVERAL VIOLATIONS OF THE CRCPA, § 772.103(3), FLA. STAT.

90.    Mr. Brooks adopts and incorporates Paragraphs 1 – 73 as if fully restated herein.

91.    Fortiva and Atlanticus, through their joint operation and control of Aspire®, constitute an "enterprise" as defined by § 772.102(3), Fla. Stat.

92.    The Aspire® Account charged an interest rate in excess of Florida's maximum permitted rate and, thus, the balance constituted "unlawful debt" under § 772.102(2), Fla. Stat.

93.    Fortiva and Atlanticus' each associated with the enterprise and participated in the affairs of the enterprise, which existed for the purpose of collection of unlawful debt.

94.    The Fortiva and Atlanticus participation in the enterprise violated **§ 772.103(3), Fla. Stat.** and caused Mr. Brooks to suffer actual damages.

**WHEREFORE,** Mr. Brooks respectfully requests this Honorable Court enter judgment against Fortiva and Atlanticus, jointly and severally, for:

   a.   Threefold the amount of actual damages or, in the alternate, the statutory minimum of $200, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

   b.   Reasonable costs and attorneys' fees pursuant to § 772.104(1), Fla. Stat.; and,

   c.   Any other relief this Court deems equitable and proper under the circumstances

## COUNT IV
## FORTIVA & ATLANTICUS' JOINT & SEVERAL VIOLATIONS OF THE CRCPA, § 772.103(4), FLA. STAT.

95.    Mr. Brooks adopts and incorporates Paragraphs 1 – 73 as if fully restated herein.

96.     Fortiva and Atlanticus, through their joint operation and control of Aspire®, constitute an "enterprise" as defined by § 772.102(3), Fla. Stat.

97.     The Aspire® Account charged an interest rate in excess of Florida's maximum permitted rate and, thus, the loan's balance constituted "unlawful debt" under § 772.102(2), Fla. Stat.

98.     Fortiva and Atlanticus violated **§ 772.103(4), Fla. Stat.** when they conspired with each other, and other entities, to issue and collect unlawful debts and to use any funds collected in furtherance of Aspire's® ongoing collection enterprise.

99.     Fortiva and Atlanticus took action in furtherance of this conspiracy. For example, at various times, they, issued the Aspire® Account to Mr. Brooks and collected or attempted to collect loan payments through reporting the tradeline to the CRAs, therefore holding Mr. Brooks' credit hostage, leaving him at the mercy of the Defendants.

100.    Fortiva and Atlanticus each agreed to participate in the conspiracy and agreed to the overall objective of the conspiracy – to collect unlawful loans through Aspire®.

**WHEREFORE,** Mr. Brooks respectfully requests this Honorable Court enter judgment against Fortiva and Atlanticus, jointly and severally, for:

a.     Threefold the amount of actual damages or, in the alternate, the statutory minimum of $200, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

b.     Reasonable costs and attorneys' fees pursuant to § 772.104(1), Fla. Stat.; and,

c.     Any other relief this Court deems equitable and proper under the circumstances

**COUNT VI**
**<u>FORTIVA & ATLANTICUS' BREACH OF CONTRACT</u>**

101.    Mr. Brooks adopts and incorporates paragraphs 1 – 73 as if fully stated herein

102.    Fortiva and Atlanticus failed to cease collection of the Aspire® Account as agreed.

103.   Fortiva and Atlanticus failed to reduce the balance of the account to $0 as agreed.

104.   Fortiva and Atlanticus failed to request deletion of its tradelines from the CRAs as agreed – and, to the contrary, made monthly reports re-alleging the balance was owed, and then verified to the CRAs the tradeline should *not* be deleted when disputed multiple times by Plaintiff.

105.   As a result, Mr. Brooks was damaged, since they harassed Mr. Brooks through credit reporting in an attempt to collect on a debt he did not owe.

106.   The Plaintiff is entitled to attorney's fees and costs incurred in her attempt to enforce the terms of this agreement.

**WHEREFORE**, Mr. Brooks respectfully requests that this Honorable Court enter judgment against Fortiva, jointly and severally, awarding the Plaintiff:

a.      Actual damages from Fortiva and Atlanticus' breach of contract;

b.      The attorney's fees and costs spent enforcing the agreement; and,

c.      Such other relief as this Court deems as proper.

## COUNT VI
### EXPERIAN'S WILLFUL VIOLATIONS OF THE FCRA
### 15 U.S.C. § 1681e(b)

107.   Mr. Brooks adopts and incorporates paragraphs 1 – 73 as if fully stated herein.

108.   Experian violated **15 U.S.C. § 1681e(b)** by failing to establish, follow, or maintain reasonable procedures to assure the maximum possible accuracy of the information in its credit reports concerning Mr. Brooks, as it continued to include the clearly erroneous Aspire® tradeline in reports it sold about Mr. Brooks, even after *two* detailed, meritorious disputes by Mr. Brooks.

109.   As a result of this conduct by Experian, Mr. Brooks has suffered a loss of his personal time, a greatly reduced credit score, financial loss, higher interest rates, lost economic opportunities, and emotional distress.

110.   Experian has been sued before for identical conduct and is thus aware that its procedures for ensuring accuracy of reports are flawed.

111.   Experian's conduct was thus willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy. Accordingly, Experian is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Brooks' actual damages or statutory damages of $1000 per violation, plus punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Mr. Brooks respectfully requests that this Honorable Court enter judgment against Experian for:

a.    The greater of statutory damages of $1,000 per incident or Mr. Brooks' actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and,

d.    Such other relief that the Court deems just and proper.

## COUNT VII
## EXPERIAN'S NEGLIGENT VIOLATIONS OF THE FCRA
## 15 U.S.C. § 1681e(b)

112.   Mr. Brooks adopts and incorporates paragraphs 1 – 73 as if fully stated herein.

113.   Experian violated **15 U.S.C. § 1681e(b)** by failing to establish, follow, or maintain reasonable procedures to assure the maximum possible accuracy of the information in its credit reports concerning Mr. Brooks, as it continued to include the clearly erroneous Aspire® tradeline in reports it sold about Mr. Brooks, even after *two* detailed, meritorious disputes by Mr. Brooks.

114.   As a result of this conduct by Experian, Mr. Brooks has suffered a loss of his personal time, a greatly reduced credit score, financial loss, higher interest rates, lost economic opportunities, and emotional distress.

115.   Experian owed Mr. Brooks a legal duty to utilize reasonable procedures to assure the maximum possible accuracy of consumer reports sold regarding Mr. Brooks.

116.   Experian breached this duty when it sold consumer reports containing the clearly erroneous Aspire® tradeline in reports it sold about Mr. Brooks, even after *two* detailed and meritorious disputes by Mr. Brooks.

117.   Experian thus acted negligently, and accordingly, Experian is liable to Mr. Brooks, pursuant to the 15 U.S.C. § 1681o, for his actual damages, reasonable attorneys' fees, and costs, and other relief.

**WHEREFORE,** Mr. Brooks respectfully requests that this Honorable Court enter judgment against Experian for:

a.   Mr. Brooks' actual damages, pursuant to 15 U.S.C. § 1681o(a)(1)

b.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681o(a)(2); and,

c.   Such other relief that the Court deems just and proper.

**COUNT VIII**
**EXPERIAN'S WILLFUL VIOLATIONS OF THE FCRA**
**15 U.S.C. § 1681i(a)(1)(A)**

118.   Mr. Brooks adopts and incorporates paragraphs 1 – 73 as if fully stated herein.

119.   Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation regarding the Aspire® tradeline disputed by Mr. Brooks. Experian blindly accepted information received from an automated ACDV response as accurate and made no further investigation on its own.

120.   As a result of this conduct by Experian, Mr. Brooks has suffered a loss of his personal time, a greatly reduced credit score, financial loss, higher interest rates, lost economic opportunities, and emotional distress.

121.  Experian has been sued before for identical conduct and is thus aware that its procedures for ensuring accuracy of reports are flawed.

122.  Experian's conduct was thus willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy.

123.  Accordingly, Experian is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Brooks' actual damages or statutory damages of $1000 per violation, plus punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Mr. Brooks respectfully requests that this Honorable Court enter judgment against Experian for:

a.  The greater of statutory damages of $1,000 per incident or Mr. Brooks' actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and,

d.  Such other relief that the Court deems just and proper.

**COUNT IX**
**EXPERIAN'S NEGLIGENT VIOLATIONS OF THE FCRA**
**15 U.S.C. § 1681i(a)(1)(A)**

124.  Mr. Brooks adopts and incorporates paragraphs 1 – 73 as if fully stated herein.

125.  Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation regarding the Aspire® tradeline disputed by Mr. Brooks. Experian blindly accepted information received from an automated ACDV response as accurate and made no further investigation on its own.

126.  As a result of this conduct by Experian, Mr. Brooks has suffered a loss of his personal time, a greatly reduced credit score, financial loss, higher interest rates, lost economic

opportunities, and emotional distress.

127.   Experian owed Mr. Brooks a legal duty to conduct a reasonable investigation upon notice of a dispute regarding an item in his consumer disclosure.

128.   Experian breached this duty when it failed to conduct a reasonable investigation regarding the Aspire® tradeline after it was disputed on two separate occasions by Mr. Brooks and blindly accepted information received from an automated ACDV response.

129.   Experian thus acted negligently, and accordingly, Experian is liable to Mr. Brooks, pursuant to the 15 U.S.C. § 1681o, for his actual damages, reasonable attorneys' fees, and costs, and other relief.

**WHEREFORE,** Mr. Brooks respectfully requests that this Honorable Court enter judgment against Experian for:

a.   Mr. Brooks' actual damages, pursuant to 15 U.S.C. § 1681o(a)(1);

b.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681o(a)(2); and,

c.   Such other relief that the Court deems just and proper.

**COUNT X**
**EQUIFAX'S WILLFUL VIOLATIONS OF THE FCRA**
**15 U.S.C. § 1681e(b)**

130.   Mr. Brooks adopts and incorporates paragraphs 1 – 73 as if fully stated herein.

131.   Equifax violated **15 U.S.C. § 1681e(b)** by failing to establish, follow, or maintain reasonable procedures to assure the maximum possible accuracy of the information in its credit reports concerning Mr. Brooks, as it continued to include the clearly erroneous Aspire® tradeline in reports it sold about Mr. Brooks, even after a detailed, meritorious dispute by Mr. Brooks.

132.   As a result of this conduct by Equifax, Mr. Brooks has suffered a loss of his personal time, a greatly reduced credit score, financial loss, higher interest rates, lost economic opportunities, and emotional distress.

133.   Equifax has been sued before for identical conduct and is thus aware that its procedures for ensuring accuracy of reports are flawed.

134.   Equifax's conduct was thus willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy. Accordingly, Equifax is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Brooks' actual damages or statutory damages of $1000 per violation, plus punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Mr. Brooks respectfully requests that this Honorable Court enter judgment against Equifax for:

a.   The greater of statutory damages of $1,000 per incident or Mr. Brooks' actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and,

d.   Such other relief that the Court deems just and proper.

**COUNT XI**
**EQUIFAX'S NEGLIGENT VIOLATIONS OF THE FCRA**
**15 U.S.C. § 1681e(b)**

135.   Mr. Brooks adopts and incorporates paragraphs 1 – 73 as if fully stated herein.

136.   Equifax violated **15 U.S.C. § 1681e(b)** by failing to establish, follow, or maintain reasonable procedures to assure the maximum possible accuracy of the information in its credit reports concerning Mr. Brooks, as it continued to include the clearly erroneous Aspire® tradeline in reports it sold about Mr. Brooks, even after a detailed, meritorious disputes by Mr. Brooks.

137.   As a result of this conduct by Equifax, Mr. Brooks has suffered a loss of his personal time, a greatly reduced credit score, financial loss, higher interest rates, lost economic opportunities, and emotional distress.

138.   Equifax owed Mr. Brooks a legal duty to utilize reasonable procedures to assure the maximum possible accuracy of consumer reports sold regarding Mr. Brooks.

139.   Equifax breached this duty when it sold consumer reports containing the clearly erroneous Aspire® tradeline in reports it sold about Mr. Brooks, even after a detailed and meritorious dispute by Mr. Brooks.

140.   Equifax thus acted negligently, and accordingly, Equifax is liable to Mr. Brooks, pursuant to the 15 U.S.C. § 1681o, for his actual damages, reasonable attorneys' fees, and costs, and other relief.

**WHEREFORE,** Mr. Brooks respectfully requests that this Honorable Court enter judgment against Equifax for:

a.   Mr. Brooks' actual damages, pursuant to 15 U.S.C. § 1681o(a)(1)

b.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681o(a)(2); and,

c.   Such other relief that the Court deems just and proper.

## COUNT XII
### EQUIFAX'S WILLFUL VIOLATIONS OF THE FCRA
### 15 U.S.C. § 1681i(a)(1)(A)

141.   Mr. Brooks adopts and incorporates paragraphs 1 – 73 as if fully stated herein.

142.   Equifax violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation regarding the Aspire® tradeline disputed by Mr. Brooks. Equifax blindly accepted information received from an automated ACDV response as accurate and made no further investigation on its own.

143.   As a result of this conduct by Equifax, Mr. Brooks has suffered a loss of his personal time, a greatly reduced credit score, financial loss, higher interest rates, lost economic opportunities, and emotional distress.

144.   Equifax has been sued before for identical conduct and is thus aware that its

procedures for ensuring accuracy of reports are flawed.

145.   Equifax's conduct was thus willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy.

146.   Accordingly, Equifax is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Brooks' actual damages or statutory damages of $1000 per violation, plus punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Mr. Brooks respectfully requests that this Honorable Court enter judgment against Equifax for:

a.   The greater of statutory damages of $1,000 per incident or Mr. Brooks's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and,

d.   Such other relief that the Court deems just and proper.

**COUNT XIII**
**EQUIFAX'S NEGLIGENT VIOLATIONS OF THE FCRA**
**15 U.S.C. § 1681i(a)(1)(A)**

147.   Mr. Brooks adopts and incorporates paragraphs 1 – 73 as if fully stated herein.

148.   Equifax violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation regarding the Aspire® tradeline disputed by Mr. Brooks. Equifax blindly accepted information received from an automated ACDV response as accurate and made no further investigation on its own.

149.   As a result of this conduct by Equifax, Mr. Brooks has suffered a loss of his personal time, a greatly reduced credit score, financial loss, higher interest rates, lost economic opportunities, and emotional distress.

150.   Equifax owed Mr. Brooks a legal duty to conduct a reasonable investigation upon notice of a dispute regarding an item in his consumer disclosure.

151.   Equifax breached this duty when it failed to conduct a reasonable investigation regarding the Aspire® tradeline after it was disputed on two separate occasions by Mr. Brooks and blindly accepted information received from an automated ACDV response.

152.   Equifax thus acted negligently, and accordingly, Equifax is liable to Mr. Brooks, pursuant to the 15 U.S.C. § 1681o, for his actual damages, reasonable attorneys' fees, and costs, and other relief.

**WHEREFORE,** Mr. Brooks respectfully requests that this Honorable Court enter judgment against Equifax for:

a.   Mr. Brooks' actual damages, pursuant to 15 U.S.C. § 1681o(a)(1);

b.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681o(a)(2); and,

c.   Such other relief that the Court deems just and proper.

### JURY TRIAL DEMANDED

Mr. Brooks hereby demands a jury trial on all issues so triable.

Respectfully submitted on July 1, 2024, by:

**SERAPH LEGAL, P. A.**

/s/ *Fethullah Gulen*
Fethullah Gulen, Esq.
Florida Bar Number: 1045392
2124 W. Kennedy Blvd., Suite A
Tampa, FL 33606
Tel: 813-567-1230
fgulen@seraphlegal.com
*Counsel for Plaintiff*

**<u>ATTACHED EXHIBITS</u>**

A  Mr. Brooks' Experian Consumer Disclosure, May 12, 2024, Aspire® Account Tradeline - Excerpt

B  Equifax Dispute Results, May 21, 2024 - Excerpt



**PLAINTIFF'S EXHIBIT A**
**Mr. Brooks' Experian Consumer Disclosure, May 12, 2024**
**Aspire® Account Tradeline - Excerpt**



# PLAINTIFF'S EXHIBIT A
## Mr. Brooks' Experian Consumer Disclosure, May 12, 2024
### Aspire® Account Tradeline - Excerpt

| Account name | Account number | Recent balance | Date opened | Status |
|---|---|---|---|---|
| TBOM/ATLS/ASPIRE | ████████ | $1,042 as of 04/28/2024 | 04/2021 | Account charged off. $1,042 written off. $1,042 past due as of Apr 2024. |
| 5 CONCOURSE PKWY STE 400 ATLANTA, GA 30328 *No phone number available* | **Type** Credit card | **Credit limit or original amount** $429 | **Date of status** 01/2023 | **Comment** Account closed at consumer's request. |
| **Address identification number** | **Terms** | | **First reported** | |

about:blank                                                                  10/24

5/12/24, 2:21 PM                           Experian - Access your credit report

| 09473 19747 | **Not reported** | **High balance** $1,042 | 05/2021 | **Reinvestigation information** |
| | **On record until** Mar 2029 | **Monthly payment** Not reported | **Responsibility** Individual | This item was updated from our processing of your dispute in Jun 2023. |
| | | **Recent payment amount** $35 as of 05/12/2022 | | |

**Comment history**

Account closed at consumer's request. | Mar 2024 - Jun 2023
Affected by natural or declared disaster | Oct 2022 | Aug 2021

**Account history**

| 2024 | | | | | | | | | | | | 2023 | | | | | | | | | | | | 2022 | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | | | | | | | | | | | | |
| Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | | 2021 | | | | | | | | | | | | | | | | | | | | | | | | |

Charge Off as of Apr 2024, Mar 2024, Feb 2024, Jan 2024, Dec 2023, Nov 2023, Oct 2023, Sep 2023, Aug 2023, Jul 2023, Jun 2023, Feb 2023, Jan 2023
90 days past due as of Sep 2022 to Dec 2022
60 days past due as of Aug 2022
30 days past due as of Jul 2022

**Balance history**

The following data will appear in the following format:
Date: account balance / date payment received / scheduled payment amount / actual amount paid
Mar 2024: $1,042 / May 12, 2022 / No data / $35
Feb 2024: $1,042 / May 12, 2022 / No data / $35
Jan 2024: $1,042 / May 12, 2022 / No data / $35
Dec 2023: $1,042 / May 12, 2022 / No data / $35
Nov 2023: $1,042 / May 12, 2022 / No data / $35
Oct 2023: $1,042 / May 12, 2022 / No data / $35
Sep 2023: $1,042 / May 12, 2022 / No data / $35
Aug 2023: $1,042 / May 12, 2022 / No data / $35
Jul 2023: $1,042 / May 12, 2022 / No data / $35
Jun 2023: $1,042 / May 12, 2022 / No data / $35
Apr 2023: $1,042 / May 12, 2022 / No data / $35
Mar 2023: $1,042 / May 12, 2022 / No data / $35
Feb 2023: $1,042 / May 12, 2022 / No data / $35
Jan 2023: $1,042 / May 12, 2022 / No data / $35
Dec 2022: $966 / May 12, 2022 / $98 / $35
Nov 2022: $892 / May 12, 2022 / $96 / $35
Oct 2022: $821 / May 12, 2022 / $94 / $35
Sep 2022: $751 / May 12, 2022 / $92 / $35
Aug 2022: $684 / May 12, 2022 / $90 / $35
Jul 2022: $619 / May 12, 2022 / $88 / $35
Jun 2022: $556 / May 12, 2022 / $86 / $35
May 2022: $529 / Mar 27, 2022 / $81 / $3.2
Between May 2022 and Mar 2024, your credit limit/high balance was $429

# PLAINTIFF'S EXHIBIT B
## Equifax Dispute Results, May 21, 2024 - Excerpt

**EQUIFAX**



CREDIT FILE : May 21, 2024

Confirmation # ███████████

Dear BROOKS JOHN:

We are pleased to let you know that the results of the dispute you recently filed with Equifax are complete.  Here are a few things to know about the process:

**Were changes made to my credit report and what actions were taken?**

Please see the following page(s) for more detailed information on your specific results.

If we were able to make changes to your credit report based on the information you provided, we have done so.  Otherwise, we contacted the company reporting the information to Equifax for them to investigate your dispute.

In this situation:

- We request that the reporting company verify the accuracy of the information you disputed;

- We provide them with any relevant information and supporting documentation you provided us with the dispute to consider as part of the investigation; and

- We request that they send Equifax a response to your dispute and update their records and systems, as necessary.

If your dispute involves a public record item, Equifax contacts a third party vendor to obtain the most recent status of the public record.

**How do I know that all of this is happening?**

When the reporting company replies to us, they certify that they have followed Equifax's instructions and the law; considered all information and documentation provided; and updated your information, as necessary.

**What should I do if I do not agree with the results of the investigation?**

You have a few options:

-  You may add a statement of up to 100 words to your credit report.  If you provide a consumer statement that contains medical information related to

(End of Report)                                        Page 1 of 22

# PLAINTIFF'S EXHIBIT B
## Equifax Dispute Results, May 21, 2024 - Excerpt

>>> *The information you disputed has been updated as well as other information on this item. Account # -* ■ *The results are:* THIS CREDITOR HAS VERIFIED TO OUR COMPANY THAT THE CURRENT STATUS IS BEING REPORTED CORRECTLY. THE PRIOR PAYING HISTORY ON THIS ACCOUNT HAS BEEN UPDATED. THIS CREDITOR HAS VERIFIED TO OUR COMPANY THAT THE BALANCE IS BEING REPORTED

(End of Report)                                  Page 3 of 22

CORRECTLY. THE FOLLOWING FIELDS HAVE BEEN MODIFIED: *ADDITIONAL INFORMATION *HISTORICAL ACCOUNT INFORMATION *ACCOUNT HISTORY.  If you have additional questions about this item please contact: *TBOM/ASPIR, 5 CONCOURSE PKWY, ATLANTA, GA 30328-5350 Phone: (877) 785-7908*

**TBOM/ASPIRE MC**   5 CONCOURSE PKWY ATLANTA GA 303285350 : 8777857908

| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Months Rand | Activity Designator | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| ■ | 04/19/2021 | | $429 | | Monthly | 36 | Closed | |

| Date of Last Reported Update | Balance Amount | Amount Past Due | Date of Last Payment | Actual Payment Amount | Scheduled Payment Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj Del 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/21/2024 | $1,042 | $1,042 | 05/2022 | $35 | | 05/2022 | | 06/2023 | $1,042 | | | | |

| Status | Type of Account | Type of Loan | Whose Account | Previous Indicator | Portfolio Status |
|---|---|---|---|---|---|
| Charge Off | Revolving | Credit Card | Individual Account | | |

ADDITIONAL INFORMATION:
*Account Closed At Consumers Request*

*A Temporary Update Freeze On File*

*Charged Off Account*

*Credit Card*
Account History with Status Codes

| 01/2023 | 12/2022 | 11/2022 | 10/2022 | 09/2022 | 08/2022 |
|---|---|---|---|---|---|
| L | 3 | 3 | 2 | 1 | 1 |

Historical Account Information

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | High Credit | Credit Limit | Amount Past Due | Type of Loan | Activity Designator |
|---|---|---|---|---|---|---|---|---|---|
| 04/24 | $1,042 | | $35 | 05/01/2022 | | $429 | $1,042 | Credit Card | Closed |
| 03/24 | | | $35 | 05/01/2022 | | $429 | | Credit Card | Closed |
| 02/24 | | | $35 | 05/01/2022 | | $429 | | Credit Card | Closed |
| 01/24 | | | $35 | 05/01/2022 | | $429 | | Credit Card | Closed |
| 12/23 | | | $35 | 05/01/2022 | | $429 | | Credit Card | Closed |
| 11/23 | | | $35 | 05/01/2022 | | $429 | | Credit Card | Closed |
| 10/23 | | | $35 | 05/01/2022 | | $429 | | Credit Card | Closed |
| 09/23 | | | $35 | 05/01/2022 | | $429 | | Credit Card | Closed |
| 08/23 | | | $35 | 05/01/2022 | | $429 | | Credit Card | Closed |

(End of Report)                                  Page 4 of 22